## BORRELLI & ASSOCIATES
### P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

March 24, 2021

*Via ECF Only*
The Honorable Sarah L. Cave
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:     <u>Baez v. Cayuga Home for Children</u>, Dkt. No. 1:20-cv-02912-SLC

Dear Judge Cave:

      We represent the twelve Plaintiffs in this wage and hour action against Defendant Cayuga Home for Children, (all, together, as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). The Parties have reached a settlement in principle following mediation and lengthy negotiations, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

**I.     Procedural History and Settlement Agreement Terms**

      On April 8, 2020, named-Plaintiffs Rosanna Baez and Elsie Santana filed this action on behalf of themselves and all others similarly-situated, against Defendant, their then-current employer, which is a not-for-profit organization operating throughout New York City, upstate New York, Delaware, and southern Florida, that is engaged in placing foster children in group homes

---

[1] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *See, e.g., Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018); *Feliz v. Parkoff Operating Corp.*, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).

and with foster families.  Plaintiffs Baez and Santana, along with opt-in Plaintiffs Tejal Parekh,[2] Jose Espino, and Nora Diaz, all filed their consent to join forms that same day, thereby becoming parties to this action.  Defendant filed its answer on June 22, 2020 (ECF # 11), denying the Complaint's material allegations.  On July 14, 2020, opt-in Plaintiff Melody Mota filed her consent to join form, also becoming a party to this action. ECF # 14.  On August 18, 2020, the parties submitted a joint letter advising Judge Vyskocil that they had agreed to conditionally certify the FLSA collective in this matter, and along with that letter submitted a joint stipulation and proposed notice regarding the same. ECF # 15.  Judge Vyskocil then held an initial conference on August 26, 2020.  During that conference, Judge Vyskocil entered an initial case management plan and scheduling order and so ordered the parties' conditional certification stipulation. ECF # 17-18.  Plaintiffs - - through counsel - - thereafter disseminated notice to twenty-one putative opt-in plaintiffs, triggering a sixty-day opt-in period, and resulting in six additional Plaintiffs - - Melissa Perez, Christian Diaz, Yamliec Rodriguez, Araulis Polanco, Tionyi Salley, and Shanyce Lewis - - joining this action. ECF #s 19-28.  The parties then requested a referral to the Court's mediation program on December 16, 2020, which Judge Vyskocil granted on December 18, 2020. ECF #s 25, 26.

Over the course of the sixty-day opt-in period for the FLSA collective, the parties conducted paper discovery, wherein Defendants produced to Plaintiffs time records and payroll records.  Plaintiffs then prepared and produced to Defendants detailed, week-by-week damages calculations for all twelve Plaintiffs.  Following this exchange, the parties participated in mediation on February 19, 2021, with the Court-appointed mediator and member of the Court's ADR panel, Julian W. Friedman, Esq., at which the action was resolved for the sum of $175,000.00 ("Settlement Sum"), which will be distributed as follows:

---

[2] On December 10, 2020, Plaintiff Tajel Parekh instituted a Chapter 7 proceeding in the Bankruptcy Court for the United States District Court of the District of New Jersey, Case No.: 20-br-23442-JKS (D.N.J.), the Honorable John K. Sherwood presiding.  Benjamin A. Stanziale, Jr., serving as Bankruptcy Trustee for that matter, has requested appointment of Plaintiffs' law firm, Borrelli & Associates, P.L.L.C. ("B&A"), as Special Counsel on behalf of Ms. Parekh's bankruptcy estate.  On February 24, 2021, Judge Sherwood granted the Trustee's requested relief and appointed B&A as Special Counsel, authorizing B&A to negotiate this settlement and release on behalf of Ms. Parekh's estate.  On March 15, 2021, Mr. Stanziale submitted a Notice of Proposed Abandonment, noting that as Trustee, he proposed abandoning Ms. Parekh's estate's interest in her share of the proceeds from this Agreement.  Pending acceptance of that abandonment and assuming no objections, and subject to this Court's review and approval of this Agreement, Plaintiff Parekh will retain her interest in her share of the settlement proceeds herein.

| Payment Recipient[3] | Total Sum Due | Share of Costs | Attorneys' Fees | W-2 Amount | 1099 Amount | Net |
|---|---|---|---|---|---|---|
| Rosanna Baez | $23,811.77 | $123.38 | $7,896.13 | $7,896.13 | $7,896.13 | $15,792.26 |
| Christian Diaz | $4,837.30 | $25.06 | $1,604.08 | $1,604.08 | $1,604.08 | $3,208.16 |
| Nora Diaz | $18,525.41 | $95.99 | $6,143.14 | $6,143.14 | $6,143.14 | $12,286.28 |
| Jose Espino | $17,305.62 | $89.67 | $5,738.65 | $5,738.65 | $5,738.65 | $11,477.30 |
| Shanyce Lewis | $12,892.58 | $66.80 | $4,275.26 | $4,275.26 | $4,275.26 | $8,550.52 |
| Melody Mota | $17,295.32 | $89.61 | $5,735.23 | $5,735.24 | $5,735.24 | $11,470.48 |
| Tajal Parekh | $22,329.71 | $115.70 | $7,404.67 | $7,404.67 | $7,404.67 | $14,809.34 |
| Melissa Perez | $1,813.81 | $9.40 | $601.47 | $601.47 | $601.47 | $1,202.94 |
| Aravelis Polanco | $6,066.36 | $31.43 | $2,011.63 | $2,011.65 | $2,011.65 | $4,023.30 |
| Yamilec Rodriguez | $15,140.08 | $78.45 | $5,020.55 | $5,020.54 | $5,020.54 | $10,041.08 |
| Tioni Salley | $10,041.60 | $52.03 | $3,329.86 | $3,329.86 | $3,329.85 | $6,659.71 |
| Elsie Santana | $24,940.44 | $129.23 | $8,270.41 | $8,270.40 | $8,270.40 | $16,540.80 |
| Borrelli & Associates, P.L.L.C. |  | $906.75 | $58,031.08 |  |  |  |

Regarding Plaintiffs' counsel's requested attorneys' fees and costs, the requested award of $59,937.83, consists of $906.75 off the top as reimbursement for counsel's out-of-pocket litigation expenses, and one-third of the net Settlement Sum, which is $58,031.08, *after* reduction of expenses, as attorneys' fees.

The Settlement Sum will be paid in a single lump-sum payment within thirty days of the Court's approval of the settlement as fair and reasonable under *Cheeks*. For the reasons described below, Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances.[4]

II.     **The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l*

---

[3] The Plaintiffs' individual shares of the settlement represent their *pro-rata* share of the total Settlement Sum as compared to their alleged damages for all claims brought in this case, including those under New York law, which vary based on their length of employment and alleged hours of work with Defendant.

[4] The parties consented to Your Honor's jurisdiction on February 23, 2021. ECF # 35.

*Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has twice recently endorsed. *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Arrango v. Scotts Co., LLC*, 2019 WL 117466, at *2 (S.D.N.Y. Jan. 7, 2019) (citing *Wolinsky*). The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

### A. *Range of Possible Recovery*

Here, Plaintiffs allege that throughout their employment, they worked an average of between forty-eight and sixty-five hours per week and that Defendant paid them a flat weekly salary which, from the beginning of their employment until in or around late 2018 / early 2019 (the parties disputed the exact date when Plaintiffs' compensation changed), did not include overtime premiums. When Defendant's compensation practices changed, Plaintiffs allege that while Defendant began ostensibly paying Plaintiffs overtime compensation, Plaintiffs in reality were required to clock-out after a fixed amount of time each week (e.g., forty-five hours - - though the clock-out threshold changed from time-to-time) and continue working off-the-clock for no compensation. Defendant, for its part, argued that prior to amending its pay practices, Plaintiffs were properly classified as exempt professionals and/or administrative employees, in light of their academic backgrounds and as they routinely exercised substantial independent discretion and judgment with respect to spur-of-the-moment decisions when responding to emergencies concerning minors arriving for foster home placement (among other responsibilities) - - and that Plaintiffs were only reclassified as exempt based on the NYLL's increased salary threshold. And when Defendant did reclassify Plaintiffs, Defendant argued that Plaintiffs worked far fewer hours than claimed, and that they in fact were not permitted to work off-the-clock for any hours, let alone the upwards of twenty hours per week that Plaintiffs alleged they worked off-the-clock. Complicating the matter for Plaintiffs, Defendant did maintain accurate contemporaneous time records for all on-the-clock hours both before and after their reclassification, leaving little room to dispute Plaintiffs' maximum damages before their reclassification, and leaving the finder of fact to engage in a credibility contest between Plaintiffs' recollection of their hours worked, and

Defendant's defenses thereto, including witness statements and testimony from other employees, post-reclassification.

Plaintiffs performed two separate calculations - - one based on Defendant's records (including the period preceding Defendant amending its payroll practice to begin paying overtime compensation), and another by including all hours Plaintiffs alleged to have worked. Based on Defendant's records, Plaintiffs' maximum overtime compensatory damages amounts to $57,828.40. If calculated based on Plaintiffs' recollections, Plaintiffs' maximum overtime compensatory damages amounts to $114,132.85.[5] These amounts would then have the potential to be doubled as liquidated damages. But again, Defendant continued to maintain that it paid Plaintiffs properly, and at the very least that Plaintiffs rarely, if ever, worked any hours off-the-clock after their reclassification. If true, Plaintiffs had virtually no damages at all. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $228,265.64.

Plaintiffs' recovery, after attorneys' fees and costs, is $116,062.17, representing nearly exactly double their best-day recovery under the FLSA (without liquidated damages) based on Defendant's records, and 101% of their best-day recovery under the FLSA (again, without liquidated damages) based on Plaintiffs' recollections. The outcome here is therefore highly reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, depositions would immediately commence, followed assuredly by dueling motions for summary judgment. Thereafter, if motion practice did not resolve the matter, the Parties were to proceed to a trial on the merits for most of the claims given their hotly disputed issues of material fact with respect to Plaintiffs' alleged hours worked, and Defendant's pre-2019 exempt classification decision. At bottom, even if successful at the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum. That is because Plaintiffs understand that if they were to continue with the litigation - - even if successful - - they may never receive more money than what Defendant is now offering, particularly when considering Defendant's not-for-profit status, and the ongoing impact that the COVID-19 pandemic has had (and continues to have) on Defendant's operations, as much of Defendant's

---

[5] If calculated for the full six-year NYLL statute of limitations, the maximum recoverable damages amount increases to $75,301.77 using Defendant's records, and $285,005.46 based on Plaintiffs' alleged recollections.

5

revenue is derived from fundraising and donations. Indeed, courts "have often found that concerns over collectability arising from a defendant's financial difficulties militate in favor of finding a wage-and-hour settlement to be fair and reasonable." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *1 n.2 (S.D.N.Y. Nov. 6, 2015) (collecting cases). Courts have also recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks only expected to substantially rise for all Parties, the Settlement Sum is especially fair and reasonable.

      **C.**    *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations were protracted and concluded only after conditional certification and the exchange of substantial paper discovery, and after a mediation session with a member of this District's panel. There was no fraud or collusion here. *E.g. Hernandez v. Anjost Corp.,* 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process.").

Furthermore, the Agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiffs' release in the Agreement is limited to any wage and hour claims that Plaintiffs have or may have had against Defendant, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180-81 (S.D.N.Y. Mar, 30, 2015). Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 96 F. Supp. 3d at 177-78); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks*, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

**D.     *The Requested Attorneys' Fees are Reasonable***

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $58,031.08, limited to one-third of the total settlement amount *after* reducing counsel's litigation expenses from the Settlement Sum. While the Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604 (emphasis added), Plaintiffs note that courts in this Circuit nevertheless routinely approve attorneys' fee awards at a rate of one-third of the total settlement, which is all that Plaintiffs' counsel seeks here. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Additionally, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of March 22, 2021, Plaintiffs' counsel has billed over 135 hours on this matter - - an adversarial litigated case as detailed herein - - amounting to $30,205.50 in fees if calculated pursuant to the lodestar (as of the time of this drafting), an amount representing a 1.9 lodestar multiplier, and well within the range of reasonableness routinely approved by courts within this District and the neighboring Eastern District. *E.g. Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (awarding multiplier of 3.04) ("Courts regularly award lodestar multipliers from 2 to 6 times the lodestar."); *Bravo v. Palm West Corp.*, No. 14-cv-9193,

Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96). This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiffs' counsel's firm's managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $295.00 per hour for Michael R. Minkoff, Esq., senior counsel and lead associate on this matter as of July 8, 2020, $295.00 per hour for Jeffrey R. Maguire, Esq., former senior counsel and former lead associate on this matter before undersigned counsel helmed the litigation; $200.00 per hour for other associates working on the matter; and $125.00 and $90.00 for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Diaz v. KC Plumbing, Inc.*, 19-cv-04321-DLI-CP, Dkt. No. 28, Unnumbered Dkt. Entry Dated March 23, 2021 Adopting Report & Recommendation (E.D.N.Y.) (granting motion for default judgment and awarding attorneys fees to B&A lawyers based on rates of $400.00, $350.00, $295.00, $200.00, and $125.00 - - the same as those requested here);*Tejada v. La Selecta Bakery, Inc.*, 17-cv-05882-EK-RER, Dkt. No. 48, Rep. & Rec. Granting Default Judgment (E.D.N.Y. Sept. 23, 2020) (on a default motion, on which fees were sought pursuant to the lodestar method, noting rates between $200 and $400 for B&A attorneys "fall within the range typically approved by this Court . . . [and] find[ing] the requested hourly rates to be reasonable"); *Salto v. Alberto's Constr., LLC*, 2020 WL 4383674, at *7 (S.D.N.Y. July 31, 2020) (citing *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015)) (on a contested motion to enforce a settlement agreement and for an award of attorneys' fees incurred with same, specifically approving B&A's requested hourly rates of $350.00 for Alexander T. Coleman, Esq., partner, and $295.00 per hour for lead associate litigating case, and noting same "are reasonable."); *In re Murray ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45 (E.D.N.Y. Dec. 13, 2019) (on a *Cheeks* motion, finding that "[t]he thorough and well-reasoned presentation of counsel with regard to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit B**. At the Court's direction, Plaintiffs' counsel's retainer agreements with Plaintiffs Baez and Santana are attached hereto as composite **Exhibit C**.[6]

---

[6] While Plaintiffs' counsel's retainer sets forth and permits it to request approval of a maximum fee of 40%, Plaintiffs' counsel seeks only one-third of the net settlement after deducting counsel's out-of-pocket litigation expenses.

Additionally, Plaintiffs' counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $906.75, comprised of the initial filing fee, service of process fees, postage, research, PACER fees, and travel. Plaintiffs' counsel's expense report reflecting these costs is attached hereto as **Exhibit D**.

Accordingly, Plaintiffs' counsel's request for a total of $58,937.83 is entirely reasonable.

### III.  Conclusion

For the foregoing reasons, Plaintiffs, on behalf of the Parties, respectfully request that the Court approve: the settlement of Plaintiffs' FLSA claims on the terms set forth in the Agreement and described herein; dismiss this matter with prejudice; and retain jurisdiction to enforce the terms of the Parties' Agreement should that become necessary. The Parties have attached a proposed order of dismissal as an exhibit to their Agreement for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

Michael R. Minkoff, Esq.
*For the Firm*

Copies to:   Counsel for Defendant (via ECF)